# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>DAVID EVAN STARR,<br><br>    Defendant. | Case No. CR06-0013<br><br>REPORT AND RECOMMENDATION |

_____

This matter comes before the court pursuant to Defendant David Evan Starr's May 1, 2006, motion to suppress evidence (docket number 30). The court held an evidentiary hearing on this motion on May 18, 2006, 2005, at which the defendant was present and represented by Anne Laverty. The government was represented by Assistant United States Attorney Sean Berry. It is recommended that the defendant's motion to suppress be denied.

## FINDINGS OF FACT

On March 16, 2005, Amanda Starr came to the Marion Police Department and met with Detective Lance Miller. She stated that she was splitting up with her husband, David Starr, and told the police that he had guns and child pornography. She gave the police all of the materials photographed in Defendant's Exhibit A. She had looked at these materials and determined that they contained child pornography.

On February 9, 2006, Troy Raper of the United States Postal Inspection Service appeared before me to seek a search warrant for these same items. That search warrant

1

refers to the fact that Lance Miller had viewed the materials but stated that Troy Raper did not desire to rely on that information to secure the warrant.

The defendant was arrested in this case on February 10, 2006, at his residence. He was immediately given his Miranda warnings and the police requested consent to search his residence. The defendant gave written consent to search his residence (Government's Exhibit 2). While the police were searching the defendant's home office, they found a locked briefcase and a locked closet in the office. Police officers brought the locked briefcase to the defendant which he opened. They observed a role of film inside the briefcase and asked what was on the roll of film. The defendant stated that he did not know. The police then asked whether they could develop the roll and the defendant said that they could. The police officers also asked for the keys to the locked closet in the office. The keys were in the locked briefcase. The defendant asked whether he could accompany the police as they searched the closet. When the police told him that he could not, the defendant stated that was okay. Before searching the closet, police went back to the written consent form (Government's Exhibit 2) and added the words "closet (roll of film)" to the description of what the defendant consented to have searched. The defendant never withdrew his consent to search.

## **CONCLUSIONS OF LAW**
### March 16, 2005 Warrantless Search

The defendant first argues that all evidence obtained as a result of Detective Miller's, and subsequently, Investigator Troy Raper's, warrantless search of the items provided to law enforcement by Amanda Starr should be suppressed. The defendant argues that law enforcement should have obtained a warrant before viewing the photo albums and videotapes. Specifically, the defendant "suggests that Detective Miller violated

[the defendant's] Fourth Amendment rights when law enforcement officers examined the items brought by Amanda Starr to the police station, without first obtaining a warrant."[1]

The court finds that a warrant to search was unnecessary as Ms. Starr's search constituted a purely private search, and Detective Miller and Agent Raper did not exceed the scope of Ms. Starr's private search when they viewed the photographs and videotapes. It is well settled that a "search by a private party not acting as an agent of the government does not implicate the Fourth Amendment." United States v. Parker, 32 F.3d 395, 398 (8th Cir. 1994) (citing United States v. Jacobsen, 466 U.S. 109 (1984). However, "[a] private citizen's conduct can . . . implicate the Fourth Amendment if the private citizen is acting as a government agent. The Fourth Amendment analysis [in this regard] . . . involves several factors- 'whether the government had knowledge of and acquiesced in the intrusive conduct; whether the citizen intended to assist law enforcement agents or instead acted to further his own purposes; and whether the citizen acted at the government's request.'" United States v. Huber, 404 F.3d 1047, 1053 (citing United States v. Smith, 383 F.3d 700, 704 (8th Cir. 2004)). United States v. Haes, 551 F.2d 767 (8th Cir. 1977).

There is absolutely no evidence in this case that Ms. Starr was acting at the direction of law enforcement officials, or that law enforcement officials had any knowledge of her private investigation concerning the defendant's activities. Neither did the officers exceed the scope of Ms. Starr's private search, as she had described that search to Detective Miller as well as in her written statement. "Where there is no government participation in or observation of the initial private search and the government is alerted after the contraband has been discovered, the inquiry must be whether the government undertakes any new or different searches when they make a separate inspection." United States v. Haes, 551 F.2d 767, 771 (8th Cir. 1977); see also United States v. Harding, 475

---

[1] The defendant cites to Walter v. United States, 447 U.S. 649 (1980); United States v. Haes, 551 F.2d 767 (8th Cir. 1977); State v. Von Bulow, 475 A.2d 995, 1015 (1984).

3

F.2d 480, 484 (10th Cir. 1973) (vacated on other grounds); United States v. Sherwin, 539 F.2d 1 (9th Cir. 1976); United States v. Kelly, 529 F.2d 1365 (8th Cir. 1976)).

The court also rejects the defendant's argument that Detective Miller should not have found Ms. Starr to be credible because, as an estranged spouse, she clearly was out "to get [the defendant] in trouble." Detective Miller testified that he did consider Ms. Starr's reliability in conjunction with her possible motives due to the estranged nature of her relationship with the defendant, but nevertheless found Ms. Starr credible because of the great amount of detail that she provided.

### February 10, 2006 Consent Search of Defendant's Residence

The defendant next argues that officers exceeded the scope of his consent when they searched his home immediately following his arrest there on February 10, 2006. As set forth in the findings of fact above, the defendant signed a consent form, reading in relevant part, as follows:

> These officers are authorized by me to take from my residence/closet (roll of film) any letters, papers, materials or other property which they may desire.

The defendant asserts that he meant to limit the scope of the officers' search when he added the words "closet (roll of film)" to this statement on the consent form. The court finds that no reasonable officer under the circumstances testified to would have understood that the defendant was so limiting his consent. The search was already in progress and the defendant had consented to a search of the entire residence. Further, the words "closet" and "roll of film" were specifically added to the consent form because the closet was locked and the roll of film was found in a locked briefcase. Out of an abundance of caution, the officers wanted those specific items added to clarify that they were included within the defendant's permission to search. The court finds that the officers did not

4

exceed the scope of the search objectively consented to by the defendant, as would have been understood based on his verbal as well as written consent to search.[2]

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections[3] to the Report and Recommendation, that the defendant's May 1, 2006, motion to suppress evidence be denied.

June 12, 2006.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT

---

[2] See e.g. Florida v. Jimeno, 500 U.S. 248 (1991) (applying a reasonable person standard for determining the scope of consent.)

[3] Any party who objects to this report and recommendation must serve and file specific, written objections within ten (10) court days from this date. A party objecting to the report and recommendation must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections.