**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ‖ | |
| Plaintiff, | ‖ | No. 06-CR-13-LRR |
| vs. | ‖ | |
| DAVID E. STARR | ‖ | **ORDER** |
| Defendant. | ‖ | |

_____

*TABLE OF CONTENTS*

I.   *INTRODUCTION* ............................................................ **2**

II.  *PROCEDURAL BACKGROUND* ...................................... **2**

III. *TRIAL EVIDENCE* ................................................... **5**
    *A.*   *Victim E.M.* ................................................ **9**
    *B.*   *Victim V.M.* ............................................... **11**
    *C.*   *Victim K.E.* ................................................ **12**
    *D.*   *Victim K.S.* ................................................ **13**

IV.  *MOTION FOR JUDGMENT OF ACQUITTAL* .................. **15**
    *A.*   *Standard of Review* ...................................... **15**
    *B.*   *Victim V.M.* ............................................... **15**
        *1.*   *Count 1* ........................................ **15**
        *2.*   *Counts 2 and 6* .............................. **18**
    *C.*   *Victim K.E.* ................................................ **20**
    *D.*   *Victim E.M.* ................................................ **23**
    *E.*   *Victim K.S.* ................................................ **25**
        *1.*   *Count 7* ........................................ **25**

       2.     *Counts 8 and 9* ............................................................ 27

V.    **MOTION FOR NEW TRIAL** ........................................................ 29
     A.    *Standard of Review* ............................................................ 29
     B.    *Analysis* ............................................................................ 30

VI.   **CONCLUSION** ........................................................................ 31

## I.  INTRODUCTION

The matter before the court is Defendant David Evan Starr's Motion for Judgment of Acquittal and for New Trial ("Motion") (docket no. 84).

## II.  PROCEDURAL BACKGROUND[1]

On February 9, 2006, Defendant was charged in a one-count Indictment. On April 6, 2006, Defendant was charged in a six-count Superseding Indictment. On May 4, 2006, Defendant was charged in a nine-count Second Superseding Indictment. On June 21, 2006, Defendant was charged in a nine-count Third Superseding Indictment. The Third Superseding Indictment did not add counts but modified the language in Counts 1, 2, 4, 5, 7 and 8 of the Second Superseding Indictment.

Count 1 charged that, in or about the last quarter of 2004 or early 2005, Defendant attempted to and did use, persuade, induce, entice and coerce "V.M.," a person under the age of eighteen, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, knowing and having reason to know that such visual depiction would be transported in interstate commerce and mailed, and

---

[1]For further background, *see United States v. Starr*, No. 06-CR-13-LRR, 2006 WL 1793579 (N.D. Iowa June 28, 2006) (sustaining and overruling objections to magistrate judge's report and recommendation denying Defendant's motion to suppress).

such visual depiction having actually been transported in interstate commerce, in violation of 18 U.S.C. §§ 2251(a) and (e).

Count 2 charged that, in or about the last quarter of 2004 or early 2005, Defendant knowingly received and attempted to receive a visual depiction of a minor, "V.M.," engaged in sexually explicit conduct, said visual depiction having been transported in interstate commerce, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1).

Count 3 charged that, in or about the last quarter of 2004, Defendant attempted to use, persuade, induce, entice and coerce "K.E.," a person under the age of eighteen, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, knowing and having reason to know that such visual depictions would be transported in interstate commerce and mailed, in violation of 18 U.S.C. §§ 2251(a) and (e).

Count 4 charged that, beginning on a date unknown and continuing until in or about March 2005, Defendant knowingly possessed photographs of a minor, "E.M.," engaged in sexually explicit conduct, said photographs having been produced from film that was mailed and transported in interstate commerce, in violation of 18 U.S.C. § 2252A(a)(5)(B).

Count 5 charged that, beginning on a date unknown and continuing until in or about March 2005, Defendant knowingly possessed video tapes of a minor, "E.M.," engaged in sexually explicit conduct, said video tapes having been mailed and transported in interstate commerce, in violation of 18 U.S.C. § 2252A(a)(5)(B).

Count 6 charged that, in or about March 2005, Defendant knowingly possessed visual depictions of a minor, "V.M.," engaged in sexually explicit conduct, said visual

depictions having been transported in interstate commerce, in violation of 18 U.S.C. § 2252A(a)(5)(B).

Count 7 charged that, in or about the last quarter of 2005 or early 2006, Defendant attempted to and did use, persuade, induce, entice and coerce "K.S.," a person under the age of eighteen, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, knowing and having reason to know that such visual depictions would be transported in interstate commerce and mailed, and such visual depictions having actually been transported in interstate commerce, in violation of 18 U.S.C. §§ 2251(a) and (e).

Count 8 charged that, in or about the last quarter of 2005 or early 2006, Defendant knowingly received and attempted to receive visual depictions of a minor, "K.S.," engaged in sexually explicit conduct, said visual depictions having been transported in interstate commerce, in violation of §§ 2252A(a)(2)(A) and (b)(1).

Count 9 charged that, in or about February 2006, Defendant knowingly possessed visual depictions of a minor, "K.S.," engaged in sexually explicit conduct, said visual depictions having been transported in interstate commerce, in violation of 18 U.S.C. § 2252A(a)(5)(B).

On July 12 and 13, 2006, Defendant was tried before a jury. Defendant was personally present and represented by counsel, Anne Laverty. Assistant United States Attorney Sean Berry represented the government. At the close of the government's case, Defendant made an oral motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The court denied the motion. At the conclusion of all of the evidence, Defendant orally renewed his motion for judgment of acquittal, and the court again denied the motion. On July 13, 2006, the jury found Defendant guilty of all counts contained in the Third Superseding Indictment. Additionally, in response to the Interrogatories submitted with the Verdict Forms, the

jury unanimously found, beyond a reasonable doubt, that all images possessed and/or received by Defendant were child pornography

On July 20, 2006, Defendant filed the instant Motion. On July 27, 2006, the government filed a Resistance to Defendant's Motion ("Resistance") (docket no. 88).

### III. TRIAL EVIDENCE

During trial, Detective Lance Miller of the Marion Police Department testified that, on March 16, 2006, Defendant's estranged wife, Amanda Starr, came to the police department with several items allegedly belonging to Defendant. She told Detective Miller that she found a key to a locked closet in the residence that she shared with Defendant. Using the key, she opened the closet and found photograph albums and a lockbox. Because the albums contained nude photographs of women and several of the photographs were close-up photographs of the vaginal areas and breasts of the women, some of whom appeared to be minors, she brought them to the police department. Mrs. Starr also provided Detective Miller with a telephone bill for their residence. Mrs. Starr brought the opened lockbox to Detective Miller.[2] Inside the lockbox were three videotapes and several computer disks. One of the videotapes was narrated by a younger female, later identified as E.M., who was giving a tour of a high school. The videotape also depicted E.M. masturbating and posing nude in front of the camera. Officers identified E.M. as the female in all three videotapes by making a still photograph from the video and taking it to the high school depicted in the first video.

---

[2]Based on the testimony presented at the hearing on Defendant's Motion to Suppress, Mrs. Starr opened the lockbox and viewed the videotapes before delivering the lockbox to Detective Miller. *See United States v. Starr*, No. 06-CR-13-LRR, 2006 WL 1793579 (N.D. Iowa June 28, 2006).

On the same day, based on the information provided by Mrs. Starr, Detective Miller obtained a warrant to search Defendant's residence. During the search, Detective Miller asked Defendant for a key to a locked desk drawer in his home office. Defendant obtained a key from the pocket of a military uniform hanging on the door to the office and provided it to Detective Miller. Inside the drawer, Detective Miller found computer profiles of several women with handwritten notes on each profile. The information in the profiles was provided by women on a website and included their names, ages, descriptions, likes, dislikes and photographs. The ages provided on several of the profiles reflected that they were for minors. Defendant explained to Detective Miller that he would print out the profiles from the Internet and write his own notes on the printed versions. Detective Miller also found a hard copy of an on-line address book which contained screen names and telephone numbers for several women. Pursuant to the search, Detective Miller seized Defendant's computer. While at Defendant's residence, Detective Miller advised Defendant of his *Miranda* rights.

Following the search, Defendant requested to speak to Detective Miller, so Detective Miller transported him to the Marion Police Department. Detective Miller reminded Defendant of his *Miranda* rights. Defendant acknowledged that the computer profiles found in his desk drawer belonged to him. Defendant explained that he took notes on the profiles so that he could remember certain characteristics about each woman. He noted information that he learned from conversations, such as a woman's breast size, height and weight, so that he could refer to the notes during future conversations. Defendant said that remembering and later referring to this information made the women feel special. Defendant told Detective Miller that he had been in contact with approximately twenty women ranging in age from seventeen to twenty-five.

Detective Miller asked Defendant about the videotapes that were supplied by Mrs. Starr. Defendant referred to the girl in the video as "Ash" and said that she was from Phoenix. Defendant accurately described to Detective Miller the content of each videotape.

Detective Miller asked Defendant about the telephone bill that Mrs. Starr had provided. Defendant explained that he would have long conversations with people around the country. He stated that portions of the conversations would be sexual.

Defendant told Detective Miller that his on-line screen name was "darklordmaster11." Defendant had this screen name printed on business cards there were seized from his residence. This screen name was also on some of the printouts found in Defendant's residence. Defendant's business cards were also imprinted with the phrase "[l]et us prey."

On January 12, 2006, Detective Miller interviewed Defendant for a second time. Detective Miller asked Defendant to distinguish between the property in police custody that was his and the property that belonged to Mrs. Starr. Defendant identified as his the metal lockbox containing the videotapes and photograph albums provided to Detective Miller by Mrs. Starr. Defendant also claimed each photograph in the albums, identified the women in the photographs and claimed the printed profiles. He explained that he did not think that Mrs. Starr knew about the profiles. Defendant referred to the three videotapes as his "jack off tapes" which he would use when his wife was cheating. Defendant told Detective Miller that he thought the girls in the videotapes were over the age of eighteen. He bragged to Detective Miller about his ability to convince girls to take photographs and make videotapes of themselves and to send them to him. Defendant estimated that he had convinced approximately forty to fifty girls to send him nude photographs and two to send him explicit videotapes.

On February 10, 2006, FBI Special Agent Jason Amoriell interviewed Defendant at his residence. Prior to the interview, Special Agent Amoriell requested Defendant's consent to have other agents search the residence. Defendant consented and signed the consent form provided by Special Agent Amoriell. During the search, agents found a locked briefcase, which Defendant opened by entering the lock's code. Inside the briefcase were folders labeled "intelligence information," which contained several forms, and a folder marked "K.S.," which contained nude photographs of a female later identified as K.S.

During Special Agent Amoriell's interview, Defendant told him that his two screen names for the Internet were "darklordmaster11" and "darklordmaster01." Special Agent Amoriell asked Defendant about the forms found in the folders labeled "intelligence information." On each form was a list of questions and answers. Defendant explained that he had formulated a standard list of questions to ask women during his initial conversations with them. The questions included questions about the women's bra sizes and genital areas. During the conversations with the women, Defendant would fill out the answers on the form so that he could refer to it during later conversations.

Special Agent Amoriell asked Defendant about the folder containing photographs of K.S. Defendant explained that K.S. was a seventeen-year-old girl who lived in New York. He stated that he met her at a website called "vampirefreaks.com." Defendant stated that he had underlined "female seventeen single" on K.S.'s form because that was his preference. Defendant explained that he requested K.S. to take and email to him nude photographs of herself. Defendant received the photographs at the Cedar Rapids library, printed them out on the library's printer and forwarded several to

another email account.[3]  Defendant explained to Special Agent Amoriell that he wanted nude photographs of K.S. so that he could see how hairy her genitalia were and so that he would have something to look at if he ever had telephone sex with her.

Special Agent Amoriell testified that he subpoenaed Defendant's telephone records and reviewed those records in addition to the telephone record provided by Mrs. Starr.  The records included calls to K.S.'s telephone number in New York and K.E.'s telephone number in Arizona.

Officers executed a search warrant for Enlightened Technologies, Defendant's office that is located at 300 First Street, Southeast, Cedar Rapids, Iowa.  The officers seized a filing cabinet and the computer that Defendant used for work.  Defendant's employer, Richard Pundt, testified that the filing cabinet was Defendant's personal filing cabinet and it did not belong to Enlightened Technologies.  Mr. Pundt stated that Defendant had his own office and it was very unlikely that anyone else had access to his computer, except for the employee who maintained computers for the office.

## A. Victim E.M.

E.M. testified that she met Defendant on the Internet through a pen pal program on America On Line when she was seventeen-years-old.  E.M. was born on August 16, 1979, lives in Phoenix, Arizona and previously attended Campbell Beck High School.  E.M., whose on-line screen name was "Ashlen," sent Defendant an email after reading his profile and deciding that the interests he listed in his profile were similar to her own.  Defendant responded to her email and the two began to correspond via email.  E.M. and Defendant eventually began to communicate using the

---

[3]Special Agent Amoriell interviewed the librarian at the Cedar Rapids Library, and she confirmed that Defendant used the library computers.

instant message program on America On Line.  E.M. testified that she told Defendant she was seventeen.

After the two developed a relationship by instant messaging, they began to talk on the telephone.  E.M. testified that she had emotional difficulties and that she cut herself.  She also testified that Defendant helped her with those difficulties.  E.M. explained that they would talk on the telephone for several hours every day.  Eventually, E.M.'s conversations with Defendant grew sexual in nature.  Defendant told her about a sexual practice involving dominance and submission.  Defendant told E.M. that he could tell by their conversations that she had a submissive personality.

Defendant and E.M. began to participate in telephone sex.  E.M. explained that, during telephone sex, she and Defendant would talk about what they were doing to themselves for arousal purposes.  Defendant asked E.M. to send him nude photographs of herself.  Defendant specifically requested close photographs of E.M.'s pubic area.  E.M. took a roll of nude photographs of herself.  As Defendant requested, several of those photographs were close shots of her pubic area.  E.M. mailed the roll of film from Phoenix to Defendant in Iowa.  E.M. stated that, at this point, her relationship with Defendant had "moved beyond friends to . . . boyfriend-girlfriend."  Defendant told E.M. that the photographs she sent were "hot" and he was happy she sent them to him.

Defendant then asked E.M. to send him videotapes.  E.M. testified at trial that she was seventeen when she took videos of herself for Defendant.  E.M. borrowed the school camera during her senior year in high school.  For the first video, Defendant asked E.M. to tape a day in her life.  She was to tape everything she did during the day, including changing her clothes in front of the camera.  As Defendant requested, the video showed E.M. giving a tour of her high school, changing her clothes,

masturbating and performing anal penetration. E.M. said that, because she was shy, it was hard for her to take the video but she did it because of her relationship with Defendant and because he asked her to take the video.

In the second video, E.M. refers to Defendant as "master," because he was the dominant in their relationship. Defendant asked E.M. to show her anus on the video, and she complied. E.M. also explained that she spanked herself on the video because Defendant wanted to see her punish herself. Again, E.M. testified that it was difficult for her to make the video because she was not an exhibitionist, and she made the video to please Defendant whom she thought of as her boyfriend.

In the third video, E.M.'s sixteen-year-old friend, Theresa, was in the video with her. Defendant and E.M. talked about involving another girl, so E.M. talked to Theresa about the possibility of being in a video. Theresa agreed to join E.M. in making the third video. During the taping of the third video, E.M. and Theresa were naked and touching each other and Defendant was on the telephone telling each girl what to do. E.M. told Defendant that Theresa was uncomfortable, but Defendant asked E.M. to keep pushing Theresa to participate because she was not uncomfortable but excited.

E.M.'s relationship with Defendant ended when they were out of contact for a week. E.M. explained that, without the constant contact, she was able to think about their relationship and realized that she did not want it to continue. E.M. sent Defendant an email, in which she told him that their relationship was over.

### B. Victim V.M.

V.M., who was born on August 24, 1988, testified that she met Defendant in about 2004 or a little over a year prior to Defendant's trial. She was about sixteen-years-old. V.M. explained that she posted a profile on the Internet at a website named,

"vampirefreaks.com," a website for people interested in alternative life-styles. She used the screen name "Guttered heart" while on the website. V.M.'s profile indicated that she was sixteen-years-old and from Chicago, Illinois. V.M. posted her profile so that she could meet people on the Internet who had similar interests. V.M. was contacted by Defendant using the screen name "darklordmaster11," and the two began to communicate with each other by email. At some point during their emails, Defendant told V.M. his real name.

V.M. and Defendant began to communicate on the computer every other day for about one month. V.M. told Defendant that she was sixteen, and Defendant lied and told her that he was in his twenties. Defendant eventually asked V.M. to send him nude photographs of herself. At his request, V.M. took nude photographs of herself using her webcam and emailed them to Defendant. Defendant told V.M. that he had received the photographs and requested that she send more photographs with closer shots of her pubic area. Defendant began to talk to V.M. about submissive and dominant sexual activities and asked V.M. about the two of them meeting in person. V.M. testified that she never met Defendant and stopped communicating with him because she grew tired of talking about sex.

### C. Victim K.E.

K.E., whose birthday is April 21, 1988, testified that she began communicating with Defendant in November of 2004 when she was sixteen-years-old and living in Arizona. K.E. stated that she placed her profile on the website, "vampirefreaks.com." As part of her profile, K.E. included the address for her residence and her birthday, which the website used to automatically update her age each year. K.E.'s screen name on "vampirefreaks.com" was "XX_unspoken_desire_X."

Defendant saw K.E.'s profile on "vampirefreaks.com" and contacted her through Yahoo. Defendant's screen name was "darklordmaster.com." Defendant told K.E. that he was between twenty-two and twenty-four-years-old. K.E. testified that Defendant's email address was "lawsonline.com," which was his business email address. K.E. told Defendant that it was easier for her to talk on the telephone instead of communicating through email, so Defendant began to call K.E. at her residence. Defendant told K.E. that he did not have a home telephone so she could not call him. Defendant explained that he was calling her from his uncle's home.

Defendant talked to K.E. about meeting her in Phoenix. K.E. testified that, because she was sixteen and living with her mother, it would be difficult for her to meet Defendant. Defendant told K.E. about the photograph albums that he had containing provocative photographs of other girls. He asked K.E. to send him provocative photographs of herself. He specifically asked K.E. for photographs of her pubic and genital area. Defendant asked K.E. if she had a webcam. K.E. lied to Defendant and told him that she did not have a webcam because she did not want to send photographs over the Internet.

K.E. testified that, when she was having telephone sex with Defendant, he asked her to "soak a pair of [her] underwear in [her] cum and put it into a Ziploc baggie and mail it to him." Defendant mailed a disposable camera to K.E. so that she could send him nude photographs. When K.E. received the camera, she testified that she was "a little freaked out," so she stopped communicating with Defendant.

### D. Victim K.S.

K.S., whose birthday is October 13, 1988, testified that she began communicating with Defendant when she was seventeen-years-old. K.S. had placed her profile on the Internet. She saw Defendant's profile on a website named "Hi5" and

noticed that he had similar interests to hers, so she sent him an email message. K.S. and Defendant began to email and instant message on a regular basis using the "Hi5" website. K.S. testified that she told Defendant she was seventeen-years-old and he told her he was twenty-four. They eventually began to communicate by telephone because Defendant said email was too impersonal.

K.S. told Defendant that she was living in Kanen, New York, and Defendant said that he wanted to visit her during spring break. K.S. talked to Defendant about her relationship with her boyfriend and the problems that she was having with that relationship. Defendant began to talk to her about sex, specifically sadistic and masochistic ("S and M") sexual conduct.[4] He told K.S. about a "black room" he wanted to build. The room was to be painted black, have a bed in the center and be filled with various sex toys. Defendant asked K.S. to visit him in Iowa, and explained to K.S. the sexual things they could do to each other.

K.S. stated that she had telephone sex with Defendant but felt "horrible" after the experience. Defendant assured K.S. that he loved her and had never developed feelings so quickly for anyone. Defendant asked K.S. to send him nude photographs that she had taken of herself. He specifically wanted nude photographs of K.S.'s pubic area, breasts and bottom. Defendant told K.S. that if she really cared for him, she would take the photographs. K.S. said that she took the photographs and emailed them to Defendant because she felt pressured by him. When he received the photographs, Defendant told K.S. that he enjoyed them and asked her to send him a video of her

---

[4] The Eighth Circuit Court of Appeals has defined sadistic and masochistic behavior as "the infliction of pain on a love object to obtain sexual release, and a delight in physical or mental cruelty." *United States v. Diaz*, 368 F.3d 991 (8th Cir. 2004) (citing *United States v. Wolk*, 337 F.3d 997, 1008 (8th Cir. 2003).

taking her clothes off slowly and spinning around. Despite Defendant's request, K.S. testified that she did not make the video for Defendant. K.S. stopped communicating with Defendant because she began dating her former boyfriend.

## IV. MOTION FOR JUDGMENT OF ACQUITTAL

### A. Standard of Review

Rule 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Such a motion is permitted after trial, in which case the court may set aside the verdict and enter a judgment of acquittal. Fed. R. Crim. P. 29(c). It is well settled, however, that "[j]ury verdicts are not lightly overturned." *United States v. Stroh*, 176 F.3d 439, 440 (8th Cir. 1999). The court must view the evidence in the light most favorable to the government and give the government the benefit of all reasonable inferences. *United States v. Surratt*, 172 F.3d 559, 563 (8th Cir. 1999). The court must uphold the jury's verdict so long as "a reasonable-minded jury could have found [Defendant] guilty beyond a reasonable doubt." *United States v. Hayes*, 391 F.3d 958, 961 (8th Cir. 2004). It is not the province of the court to weigh the evidence or evaluate the credibility of witnesses. *Id.* Those tasks are for the jury. *Id.*

### B. Victim V.M.

#### 1. Count 1

Count 1 of the Third Superseding Indictment charged Defendant with sexual exploitation of a minor, namely V.M., in violation of 18 U.S.C. §§ 2251(a) and (e). Title 18 U.S.C. section 2551(a) provides:

> (a) Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually

explicit conduct for the purpose of producing any visual
depiction of such conduct, shall be punished as provided
under subsection (e), if such person knows or has reason to
know that such visual depiction will be transported in
interstate . . . commerce or mailed . . . or if such visual
depiction has actually been transported in interstate . . .
commerce or mailed.

For the jury to find Defendant guilty under Count 1, the government had to prove the
following elements beyond a reasonable doubt:

| | |
|---|---|
| *One*, | in or about the last quarter of 2004 or early 2005, V.M. was under the age of eighteen years; |
| *Two*, | Defendant attempted to and used, persuaded, induced, enticed, or coerced the female V.M. to engage in sexually explicit conduct; |
| *Three*, | Defendant voluntarily and intentionally did this for the purpose of causing the production of a visual depiction of such conduct; and |
| *Four*, | Defendant knew or had reason to know that the visual depiction would be transported in interstate commerce or mailed, or that the visual depiction was actually transported in interstate commerce. |

*See* Final Jury Instr. Nos. 10 and 11; *see also* 18 U.S.C. §§ 2(b) and 2251(a); Ninth
Circuit Model Jury Instruction 8.150 (2003); Eighth Circuit Model Jury Instruction
3.09 (2003).

In his Motion, Defendant asserts that the evidence is insufficient to support his
conviction under Count 1 of the Third Superseding Indictment. More specifically,
Defendant alleges that there is insufficient evidence that he attempted to or did
persuade, induce, entice or coerce V.M. to send him nude photographs of herself,
because the evidence presented at trial indicates that V.M. sent him the photographs
voluntarily. Defendant also contends that Mrs. Starr had access to his computer and

could have requested the photographs of V.M. Accordingly, Defendant asserts that his request for a judgment of acquittal should be granted.

The evidence presented during trial is sufficient to support the jury's verdict. V.M., a sixteen-year-old girl from Chicago, Illinois, testified that she began emailing Defendant after she saw his profile on a website called "vampirefreaks.com." She testified she told Defendant she was sixteen and he told her that he was in his twenties. The two emailed each other every day and developed a relationship. Defendant told V.M. that he wanted to come to Chicago to meet her and wanted to take her to London, promising to pay for the trip. Defendant began to tell V.M. about submissive and dominant sexual activities. After their emails became more sexual in nature, Defendant asked V.M. to take nude photographs of herself using her webcam. V.M. instead sent Defendant photographs of herself in which she was clothed. Defendant again requested nude photographs of V.M., and she eventually emailed him nude photographs which she had taken with her webcam. Simply because Defendant did not physically force V.M. to send him explicit photographs does not mean that there was insufficient evidence that he used, persuaded, induced, enticed or coerced her to take and send them. Defendant lied to V.M. about his age, emailed her each day, developed a relationship with her on the Internet, told V.M. that he wanted to take her to London and, after talking to her about sex, requested that she send him nude photographs of herself. When V.M. sent Defendant non-nude photographs of herself, Defendant asked her for nude photographs instead. V.M. testified that she took and emailed the photographs because Defendant had repeatedly asked her for photographs.

Furthermore, Defendant's contention that Mrs. Starr requested the nude photographs is not supported by the evidence. Detective Miller testified that Defendant identified the photographs in the albums as belonging to him. No evidence was

presented to indicate that Mrs. Starr had ever communicated with V.M. There is sufficient evidence to lead a reasonable jury to believe that Defendant, and not Mrs. Starr, used, persuaded, induced, enticed or coerced V.M. to take nude photographs of herself and email them to him. Accordingly, Defendant's request for judgment of acquittal is denied.

### 2. *Counts 2 and 6*

Count 2 of the Third Superseding Indictment charged Defendant with receiving child pornography, namely depictions of V.M. engaged in sexually explicit conduct, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1). Title 18 U.S.C. section 2252A(a)(2)(A) provides that "any person who knowingly receives or distributes any child pornography that has been mailed, or shipped or transported in interstate. . . commerce by any means, including by computer" is subject to the sentence found in 18 U.S.C. § 2252A(b)(1). For the jury to find Defendant guilty under Count 2, the government had to prove the following elements beyond a reasonable doubt:

| *One*, | in or about the last quarter of 2004 or early 2005, Defendant knowingly received one or more visual depictions of a minor, V.M., engaged in sexually explicit conduct; |
|---|---|
| *Two*, | Defendant knew the visual depiction under consideration was of a minor engaging in sexually explicit conduct; and |
| *Three*, | the visual depiction under consideration had been mailed, shipped or transported in interstate commerce. |

*See* Final Jury Instr. No. 12; *see also* Eighth Circuit Model Jury Instructions 6.18.2252A (2005).

Count 6 of the Third Superseding Indictment charged Defendant with the possession of child pornography, specifically, depictions of V.M. engaged in sexually

explicit conduct, in violation of 18 U.S.C. § 2252A(a)(5)(B).  Title 18 U.S.C. section 2252A(a)(5)(B) provides that "any person who knowingly possesses any . . . videotape . . . that contains an image of child pornography that has been mailed, or shipped or transported in interstate . . . commerce by any means, including computer. . ." is subject to the sentence under 18 U.S.C. § 2252A(b)(2).  For the jury to find Defendant guilty of Count 6, the government had to prove the following elements beyond a reasonable doubt:

| | |
|---|---|
| *One*, | in or about March 2005, Defendant knowingly possessed one or more visual depictions of a minor, V.M., engaged in sexually explicit conduct; |
| *Two*, | Defendant knew the visual depiction under consideration was of a minor engaging in sexually explicit conduct; and |
| *Three*, | the visual depiction under consideration had been mailed, shipped or transported in interstate commerce. |

*See* Final Jury Instr. No. 15; *see also* Eighth Circuit Model Jury Instructions 6.18.2252A (2005).

In his Motion, Defendant contends that the evidence is insufficient to support his conviction under Counts 2 and 6 of the Third Superseding Indictment.  Defendant asserts that there is insufficient evidence that he *personally* received, attempted to receive or knowingly possessed the nude images of V.M. that Mrs. Starr provided to the police because Mrs. Starr planted the photographs for the police to find.  Defendant alleges that on this basis his request for judgment of acquittal should be granted.

There is sufficient evidence to support the jury's convictions under Counts 2 and 6 of the Third Superseding Indictment.  V.M. testified that, after she began emailing Defendant, he asked her to send him nude photographs of herself.  When V.M.

eventually took and emailed the photographs to Defendant, he acknowledged that he had received them and requested additional photographs. As the government explained in its Response, Detective Miller testified that he seized nude photographs of V.M. pursuant to the first search of Defendant's residence. During the search and at Detective Miller's request, Defendant retrieved the key to his locked desk drawer from the pocket of a military uniform hanging on a door and gave the key to Detective Miller. Upon opening the drawer, Detective Miller found a file containing multiple photographs of nude women, including photographs of V.M.

Defendant's assertion that Mrs. Starr "planted the pictures . . . to get him in trouble" is not supported by the evidence. During Detective Miller's interview of Defendant at the police station, Defendant admitted that the photographs contained in the file from his desk were, in fact, his. Defendant bragged to Detective Miller about his ability to entice girls to send him nude photographs of themselves and stated, that by using his salesman tactics, he could get them to send him the photographs. There is sufficient evidence to sustain a reasonable jury's determination that Defendant is guilty under Counts 2 and 6 of the Third Superseding Indictment. Accordingly, Defendant's request for a judgment of acquittal is denied.

### C. Victim K.E.

Count 3 of the Third Superseding Indictment charged Defendant with the attempted sexual exploitation of a minor, in violation of 18 U.S.C. §§ 2251(a) and (e). For the jury to find Defendant guilty under Count 3, the government had to prove the following elements beyond a reasonable doubt:

*One*,      in or about the last quarter of 2004, K.E. was under the age of eighteen years;

|       |                                                                                 |
|-------|---------------------------------------------------------------------------------|
| *Two*,   | Defendant attempted to use, persuade, induce, entice, or coerce K.E. to engage in sexually explicit conduct; |
| *Three*, | Defendant voluntarily and intentionally did this for the purpose of causing the production of a visual depiction of such conduct; and |
| *Four*,  | Defendant knew or had reason to know that the visual depiction would be transported in interstate commerce or mailed. |

*See* Final Jury Instr. No. 11; *see also* 18 U.S.C. §§ 2(b) and 2251(a); Ninth Circuit Model Jury Instruction 8.150 (2003); Eighth Circuit Model Jury Instruction 3.09 (2003).

In his Motion, Defendant asserts that there is insufficient evidence to support his conviction under Count 3 of the Third Superseding Indictment. Defendant alleges that evidence presented at trial is insufficient to prove that he persuaded, enticed or coerced K.E. to send him nude photographs because the evidence does not show that he threatened K.E. Defendant asserts that his Motion should be granted on this basis.

There is sufficient evidence to support the jury's finding that Defendant is guilty under Count 3 of the Third Superseding Indictment. K.E. testified that her relationship with Defendant began when she was sixteen-years-old. K.E. had placed her profile on the website "vampirefreaks.com," and Defendant emailed her in response to that profile. K.E. told Defendant that she was sixteen and Defendant told K.E. that he was between twenty-two and twenty-four-years-old. When they began to email each other, K.E. explained to Defendant that it was easier for her to talk on the telephone than to communicate using email, so Defendant began to call her. The telephone records seized by Special Agent Amoriell and provided by Mrs. Starr contained several calls from Defendant to K.E. in Phoenix, Arizona. Defendant asked K.E. if she would be able to meet him in Phoenix, but K.E. testified that she knew it would be difficult for

her to meet him because she was only sixteen and living with her mother. Defendant told K.E. that other girls had sent him nude photographs of themselves and he asked her to send him nude photographs of herself. Defendant specifically requested photographs of K.E.'s pubic area. K.E. told Defendant that she did not have a camera, so Defendant mailed a disposable camera to her residence in Phoenix. K.E. testified that she was "a little freaked out" when Defendant mailed her the camera, so she did not take the photographs and stopped communicating with him.

Defendant's asserts that, because the evidence fails to show that he threatened K.E., the evidence is insufficient to prove that he attempted to persuade, entice, coerce or induce her to take and send the photographs. Title 18 U.S.C. section 2251(a) does not require a defendant to threaten or use force of any kind to be guilty of the production of child pornography. 18 U.S.C. § 2251(a); *see also, United States v. Champion*, 248 F.3d 502, 505 (6th Cir. 2001) (holding that "the use, attempted use, or threatened use of force is not an element of 18 U.S.C. § 2251(a)"). Defendant need only have attempted to persuade, use, entice, coerce or induce K.E. to take and send explicit photographs to be guilty under Count 3 of the Third Superseding Indictment. Additionally, even though K.E. chose not to send nude photographs to Defendant, the evidence is sufficient to show that he attempted to persuade, entice or coerce her to send explicit photographs. Defendant developed a relationship with K.E. on the computer and telephone, told K.E. that he was in his early twenties, told K.E. that other girls had sent him nude photographs, asked her to send photographs of her pubic area and even sent her a camera to take the photographs. Accordingly, Defendant's request for a judgment of acquittal on this basis is denied.

### D. Victim E.M.

Count 4 of the Third Superseding Indictment charged Defendant with possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). For the jury to find Defendant guilty under Count 4, the government had to prove the following elements beyond a reasonable doubt:

*One*,    beginning on a date unknown and continuing until in or about March 2005, Defendant knowingly possessed one or more visual depictions of a minor, E.M., engaged in sexually explicit conduct;

*Two*,    Defendant knew the visual depiction under consideration was of a minor engaging in sexually explicit conduct; and

*Three*,    the visual depiction under consideration had been mailed, shipped or transported in interstate commerce.

*See* Final Jury Instr. No. 15; *see also United States v. Crume*, No. 03-3047 (N.D. Iowa, August 13, 2004).

Count 5 of the Third Superseding Indictment charged Defendant with possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). For the jury to find Defendant guilty under Count 5, the government had to prove the following elements beyond a reasonable doubt:

*One*,    beginning on a date unknown and continuing until in or about March 2005, Defendant knowingly possessed one or more visual depictions of a minor, E.M., engaged in sexually explicit conduct;

*Two*,    Defendant knew the visual depiction under consideration was of a minor engaging in sexually explicit conduct; and

*Three*,    the visual depiction under consideration had been mailed, shipped or transported in interstate commerce.

*See* Final Jury Instr. No. 15; *see also* Eighth Circuit Model Criminal Jury Instructions 6.15.

Defendant asserts that there is insufficient evidence to support his convictions under Counts 4 and 5 of the Third Superseding Indictment. Defendant contends that there is insufficient evidence that he knowingly possessed explicit photographs and videotapes of E.M. during the time period alleged in the Third Superseding Indictment. Defendant asserts that no testimony was presented to indicate that he possessed the images of E.M. at any point before March 2005. Accordingly, Defendant asserts that his request for judgment of acquittal should be granted.

Defendant's assertions are not supported by the evidence presented. During trial, E.M. testified that she was born on August 16, 1979. E.M. explained that she began communicating with Defendant when she was seventeen-years-old and a senior in high school, which was in 1996. At Defendant's request, E.M. used the school's video camera and made a videotape of her daily life. This first video included a tour of E.M.'s high school, E.M. dressing in front of the camera and E.M. masturbating. E.M. also testified that she sent Defendant nude photographs of herself when she was seventeen. Furthermore, Detective Miller testified that he was able to identify the approximate age and location of the all of the videotapes by observing images in each video such as a newspaper article and background scenery. During Detective Miller's interview of Defendant, Defendant identified E.M. in the videotapes provided by Mrs. Starr. He referred to E.M. as "Ash" in reference to her screen name "Ashlen." Accordingly, there is sufficient evidence to support the jury's finding that Defendant is guilty of Counts 4 and 5 of the Third Superseding Indictment. Defendant's request for judgment of acquittal on these counts is denied.

### E. Victim K.S.

#### 1. Count 7

Count 7 of the Third Superseding Indictment charged Defendant with the sexual exploitation of a minor, namely K.S., in violation of 18 U.S.C. §§ 2251(a) and (e). For the jury to find Defendant guilty under Count 1, the government had to prove the following beyond a reasonable doubt:

*One*, in or about the last quarter of 2005 or early 2006 K.S. was under the age of eighteen years;

*Two*, Defendant attempted to and used, persuaded, induced, enticed, or coerced K.S. to engage in sexually explicit conduct;

*Three*, Defendant voluntarily and intentionally did this for the purpose of causing the production of a visual depiction of such conduct; and

*Four*, Defendant knew or had reason to know that the visual depiction would be transported in interstate commerce or mailed, or that the visual depiction was actually transported in interstate commerce.

*See* Final Jury Instr. Nos. 10 and 11; *see also* 18 U.S.C. §§ 2(b) and 2251(a); Ninth Circuit Model Jury Instruction 8.150 (2003); Eighth Circuit Model Jury Instruction 3.09 (2003).

In his Motion, Defendant alleges that there is insufficient evidence to support his conviction under Count 7 of the Third Superseding Indictment.[5] Defendant asserts that the evidence presented during trial is insufficient to show that he attempted or used,

---

[5]In his Motion, Defendant refers to Count 5 of the Third Superseding Indictment. Because Count 5 involves Victim E.M. and not Victim K.S., the court assumes that Defendant intended to refer to Count 7 of the Third Superseding Indictment and will address Defendant's assertion accordingly.

persuaded, induced, enticed or coerced K.S. to send him nude photographs of herself. Defendant asserts that his Motion should be granted on this basis.

There is sufficient evidence to support a reasonable jury's determination that Defendant is guilty under Count 7 of the Third Superseding Indictment. K.S. testified that, when she was seventeen, she saw Defendant's profile on a website named "Hi5" and noticed he had similar interests. K.S. sent Defendant an email, and the two began communicating on a regular basis. K.S. stated that she told Defendant she was seventeen and he told her he was twenty-four. After developing a relationship on-line, the two began to talk on the telephone. The telephone records seized by Special Agent Amoriell and provided by Mrs. Starr, indicate that Defendant called K.S. numerous times at her residence in Kanen, New York. K.S. testified that eventually her conversations with Defendant turned sexual. Defendant told K.S. about "S and M" sexual activities and about the sexual things that he wanted to do to her. Defendant explained to K.S. that he wanted to build a room, paint it black, put a bed in the center of the room and fill the room with sex toys. Defendant told K.S. that he had never developed strong feelings for anyone as quickly as he had for her and, if she really cared about him, she would send him nude photographs of herself. K.S. testified that she took the photographs and emailed them to Defendant because she felt pressured to do so. After receiving the photographs, Defendant asked K.S. to make a video for him. He wanted K.S. to take her clothes off slowly in front of the video camera and spin around so that he could see her. K.S. did not send Defendant the video and ended her relationship with him so that she could date her former boyfriend.

Knowing that K.S. was seventeen, Defendant developed a relationship with her, told her he had quickly developed strong feelings for her, asked if he could visit her in New York and told her that if she really cared about him, she would send him nude

photographs. K.S. testified that she felt pressured to send the photographs to Defendant. There is sufficient evidence that Defendant used, persuaded, induced, enticed, or coerced K.S. to send nude photographs of herself and attempted to use, persuade, induce, entice, or coerce K.S. to send an explicit videotape to him. Accordingly, Defendant's request for judgment of acquittal is denied.

### 2. Counts 8 and 9

Count 8 of the Third Superseding Indictment charged Defendant with receiving and attempting to receive child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1). For the jury to find Defendant guilty under Count 8, the government had to prove the following beyond a reasonable doubt:

| | |
|---|---|
| *One*, | in or about the last quarter of 2005 or early 2006, Defendant knowingly received one or more visual depictions of a minor, K.S., engaged in sexually explicit conduct; |
| *Two*, | Defendant knew the visual depiction under consideration was of a minor engaging in sexually explicit conduct; and |
| *Three*, | the visual depiction under consideration had been mailed, shipped or transported in interstate commerce. |

*See* Final Jury Instr. No. 12; *see also* Eighth Circuit Model Criminal Jury Instructions 6.18.2252A (2005).

Count 9 of the Third Superseding Indictment charged Defendant with possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). For the jury to find Defendant guilty under Count 9, the government had to prove the following elements beyond a reasonable doubt:

| | |
|---|---|
| *One*, | in or about February 2006, Defendant knowingly possessed one or more visual depictions of a minor, K.S., engaged in sexually explicit conduct; |

| *Two*, | Defendant knew the visual depiction under consideration was of a minor engaging in sexually explicit conduct; and |
|---|---|
| *Three*, | the visual depiction under consideration had been mailed, shipped or transported in interstate commerce. |

*See* Final Jury Instr. No. 8; *see also United States v. Crume*, No. 03-3047 (N.D. Iowa, August 13, 2004).

Defendant contends that there is insufficient evidence to support his convictions under Counts 8 and 9 of the Third Superseding Indictment. Defendant alleges that there is insufficient evidence that he actually received, attempted to receive and knowingly possessed emailed photographs of K.S. because others had access to the computer located in his office. Accordingly, Defendant asserts that his request for judgment of acquittal on these counts should be granted.

There is sufficient evidence to support the jury's determinations that Defendant is guilty of receiving and possessing visual depictions of K.S. engage in sexually explicit conduct. Evidence presented at trial does not support Defendant's assertion that someone else at his office used his computer to receive photographs of K.S. Mr. Pundt, Defendant's employer, testified that, except for the computer technician, it was unlikely for anyone besides Defendant to have access to Defendant's computer. Furthermore, Defendant admitted to possessing the photographs of K.S. Special Agent Amoriell testified that, during the search of Defendant's residence, agents found a locked briefcase that belonged to Defendant. At Special Agent Amoriell's request, Defendant opened the briefcase by entering the combination to the lock. Inside the briefcase, Special Agent Amoriell found a file containing nude photographs of K.S. Special Agent Amoriell testified that, when he questioned Defendant about the photographs, Defendant admitted that the file and the photographs of K.S. belonged to

him.  Defendant even explained to Special Agent Amoriell that he asked K.S. to send him the photographs of her pubic area so that he could see how "hairy her genitalia" was.  Defendant stated that he wanted the photographs so that he could look at them if he engaged in telephone sex with K.S.  Accordingly, there is sufficient evidence to support the jury's conclusions regarding Counts 8 and 9 of the Third Superseding Indictment.  Defendant's motion for judgment of acquittal on those counts is denied.

## V.  MOTION FOR NEW TRIAL

### A.  Standard of Review

Federal Rule of Criminal Procedure 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33.  Under Rule 33, district courts are granted broad discretion in considering motions for new trial.  *United States v. Wilkins*, 139 F.3d 603, 604 (8th Cir. 1998).  A district court may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict."  *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002) (quoting *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992)).  However, "[u]nless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand."  *Id.* (citing *United States v. Lacey*, 219 F.3d 779, 783 (8th Cir. 2000)); *see also Ortega v. United States*, 270 F.3d 540, 547 (8th Cir. 2001) (noting that a district court may grant a new trial under Rule 33 "'only if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred'" (quoting *United States v. Lacey*, 219 F.3d 779, 783 (8th Cir. 2000))).

The Eighth Circuit Court of Appeals has noted that district courts enjoy more latitude in granting new trials under Rule 33 than in granting motions for acquittal under Rule 29.  *Campos*, 306 F.3d at 579.  However, "[m]otions for new trials based

on the weight of the evidence are generally disfavored," and, therefore, district courts should exercise their Rule 33 authority "sparingly and with caution." *Id.*; *see also United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980).

## B. *Analysis*

In his Motion, Defendant asserts that he should be granted a new trial because the court improperly denied his objections to jury instructions 10 and 11. Defendant alleges that the court improperly included language allowing the jury to convict him under Counts 1, 3 and 7 if it found that he "attempted to use, persuade, induce, entice or coerce V.M., K.E. or K.S. to engage in sexually explicit conduct. . . *for the purpose of causing the production* of a visual depiction of such conduct." Final Jury Instruction Nos. 10 and 11 (emphasis added). Defendant contends that the Third Superseding Indictment and 18 U.S.C. § 2251(a) use the term "producing" instead of "causing the production" and, therefore, jury instructions 10 and 11 were improper.

It is true that 18 U.S.C. § 2251(a) provides that it is a crime to employ, use, persuade, induce, entice or coerce "any minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct." Nonetheless, a person may be convicted of aiding and abetting or causing an act to be done under 18 U.S.C. § 2 even though an indictment charges the defendant as a principal and not as an aider and abettor. *United States v. McKnight*, 799 F.2d 443, 445 (8th Cir. 1986); *United States v. Beardslee*, 609 F.2d 914, 919 (8th Cir. 1979); *United States v. Frye*, 548 F.2d 765, 767 n.4 (8th Cir. 1977). Therefore, any person who causes the production of child pornography is punishable as a principal. *See United States v. Good Shield*, 544 F.2d 950, 952 (8th Cir. 1976) ("Aiders and abettors and those causing an act to be done are punishable as principals. The indictment may charge a defendant as a principal, and need not specifically allege that he aided and abetted in

the commission of the crime." (citations omitted.)) Accordingly, even though Counts 1, 3, and 7 of the Third Superseding Indictment charged Defendant as the principal, the court properly instructed the jury that it could find Defendant guilty of those counts if it unanimously found beyond a reasonable doubt that Defendant caused the production of child pornography. The jury instructions were correct statements of the law and were warranted by the evidence presented during trial. Defendant's request for a new trial is, therefore, denied.

## VI. CONCLUSION

**IT IS SO ORDERED** that Defendant David Starr's Motion for Judgment of Acquittal and for New Trial (docket no. 84) is **DENIED**.

**DATED** this 24th day of October, 2006.

LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA