# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 06-CR-13-LRR |
| vs. | **SENTENCING MEMORANDUM** |
| DAVID EVAN STARR, | |
| Defendant. | |

_____

## TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  RELEVANT PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . 2

III. ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.   Victim E.M. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        1.   Cross-reference applicability—USSG §2G2.2(c)(1) . . . . . . . . . 5
        2.   Commission of a sexual act—USSG §2G2.1(b)(2)(A) . . . . . . . 8
        3.   Sadistic and violent conduct—USSG §2G2.1(b)(4) . . . . . . . . 10
        4.   Vulnerable victim—USSG §3A1.1(b)(1) . . . . . . . . . . . . . . 10

    B.   Victim T.(LNU) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        1.   Minor victim—USSG §2G2.2 cmt. (n.1) . . . . . . . . . . . . . . 12
        2.   Cross-reference applicability—USSG §2G2.2(c)(1) . . . . . . . . 12

    C.   Three Other Victims: K.E., V.M. and K.S. . . . . . . . . . . . . . . . . . 13
        1.   K.E. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        2.   V.M. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        3.   K.S. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        4.   Disposition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    D.   Repeat and Dangerous Sex Offender—USSG §4B1.5(b)(1) . . . . . . 16

    E.   Defendant's Criminal History . . . . . . . . . . . . . . . . . . . . . . . . 18
        1.   1987 Theft Conviction . . . . . . . . . . . . . . . . . . . . . . . 18
        2.   Committing offense while on supervised release . . . . . . . . . 19

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## I.  INTRODUCTION

The matter before the court is the sentencing of Defendant David Evan Starr.

## II.  RELEVANT PROCEDURAL BACKGROUND[1]

On June 21, 2006, Defendant was charged in a nine-count Third Superseding Indictment with various sex offenses against children.[2]

Count 1 charged that, in or about the last quarter of 2004 or early 2005, Defendant attempted to and did use, persuade, induce, entice and coerce "V.M.," a person under the age of eighteen, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, knowing and having reason to know that such visual depiction would be transported in interstate commerce and mailed, and such visual depiction having actually been transported in interstate commerce, in violation of 18 U.S.C. §§ 2251(a) and (e).

Count 2 charged that, in or about the last quarter of 2004 or early 2005, Defendant knowingly received and attempted to receive a visual depiction of a minor, "V.M.," engaged in sexually explicit conduct, said visual depiction having been transported in interstate commerce, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1).

Count 3 charged that, in or about the last quarter of 2004, Defendant attempted to use, persuade, induce, entice and coerce "K.E.," a person under the age of eighteen, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, knowing and having reason to know that such visual depictions would be transported in interstate commerce and mailed, in violation of 18 U.S.C. §§ 2251(a) and (e).

---

[1] Most of the factual and procedural background of this case is set forth in a prior order and need not be repeated in its entirety here.  *See* Order (docket no. 96).

[2] On February 9, 2006, Defendant was charged in a one-count Indictment.  On April 6, 2006, Defendant was charged in a six-count Superseding Indictment.  On May 4, 2006, Defendant was charged in a nine-count Second Superseding Indictment.

2

Count 4 charged that, beginning on a date unknown and continuing until in or about March 2005, Defendant knowingly possessed photographs of a minor, "E.M.," engaged in sexually explicit conduct, said photographs having been produced from film that was mailed and transported in interstate commerce, in violation of 18 U.S.C. § 2252A(a)(5)(B).

Count 5 charged that, beginning on a date unknown and continuing until in or about March 2005, Defendant knowingly possessed video tapes of a minor, "E.M.," engaged in sexually explicit conduct, said video tapes having been mailed and transported in interstate commerce, in violation of 18 U.S.C. § 2252A(a)(5)(B).

Count 6 charged that, in or about March 2005, Defendant knowingly possessed visual depictions of a minor, "V.M.," engaged in sexually explicit conduct, said visual depictions having been transported in interstate commerce, in violation of 18 U.S.C. § 2252A(a)(5)(B).

Count 7 charged that, in or about the last quarter of 2005 or early 2006, Defendant attempted to and did use, persuade, induce, entice and coerce "K.S.," a person under the age of eighteen, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, knowing and having reason to know that such visual depictions would be transported in interstate commerce and mailed, and such visual depictions having actually been transported in interstate commerce, in violation of 18 U.S.C. §§ 2251(a) and (e).

Count 8 charged that, in or about the last quarter of 2005 or early 2006, Defendant knowingly received and attempted to receive visual depictions of a minor, "K.S.," engaged in sexually explicit conduct, said visual depictions having been transported in interstate commerce, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1).

Count 9 charged that, in or about February 2006, Defendant knowingly possessed visual depictions of a minor, "K.S.," engaged in sexually explicit conduct, said visual

3

depictions having been transported in interstate commerce, in violation of 18 U.S.C. § 2252A(a)(5)(B).

On July 13, 2006, after a two-day trial, a unanimous federal jury found beyond a reasonable doubt that Defendant was guilty on all counts of the Third Superseding Indictment.

On January 24, 2007, the United States Probation Office ("USPO") prepared a Presentence Investigation Report ("PSIR"). On February 12 and 19, 2007, respectively, the government and Defendant filed objections to the PSIR. On March 1, 2007, the USPO revised the PSIR.

On March 9, 2007, the parties filed a Joint Motion for Bifurcated Sentencing Proceeding ("Motion"). On March 13, 2007, the court granted the Motion.

On March 16 and 20, 2007, respectively, Defendant and the government filed their sentencing memoranda on ten advisory Sentencing Guidelines issues.[3] On April 13, 2007, the court held an evidentiary hearing ("Hearing"). Assistant United States Attorney Sean R. Berry represented the government. Attorney Anne M. Laverty represented Defendant, who was personally present.

### III. ANALYSIS

The government bears the burden of proof on all ten issues. *See United States v. Flores*, 362 F.3d 1030, 1037 (8th Cir. 2001) (stating that the government bears the burden to prove sentencing enhancements). To the extent necessary, the court makes factual findings by a preponderance of the evidence. *See United States v. Bah*, 439 F.3d 423, 426 n.1 (8th Cir. 2006) ("[J]udicial fact-finding using a preponderance of the evidence standard is permitted provided that the guidelines are applied in an advisory manner.").

---

[3] The Sentencing Guidelines are not mandatory. *United States v. Jeremiah*, 446 F.3d 805, 807 (8th Cir. 2006) (citations omitted). However, the court is "still required to consult the Guidelines and take them into account . . . ." *Id.*

### A. Victim E.M.

#### 1. *Cross-reference applicability—USSG §2G2.2(c)(1)*

The first issue is whether the court should apply the cross-reference contained in USSG §2G2.2(c)(1) with respect to E.M. *See* PSIR ¶ 48.

The applicable guideline for Defendant's convictions on Counts 4 and 5, in violation of 18 U.S.C. § 2252A(a)(5)(B) and with respect to E.M., is §2G2.2. *See* USSG App. A. This ordinarily results in a base offense level of **18**. USSG §2G2.2(a)(1). However, the government urges the court to apply the cross-reference at USSG §2G2.2(c)(1) to USSG §2G2.1, because the relevant conduct shows that "the offense involved causing . . . a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct." USSG §2G2.2(c)(1). The "cross-reference merely implements the common sense notion that . . . [a] possessor who has manufactured the pornography in his possession is both more culpable and more dangerous than the one who has . . . possessed the pornography and no more." *United States v. Dawn*, 129 F.3d 878, 884 (7th Cir. 1997). If the cross-reference applies, Defendant's base offense level is **32**. USSG §2G2.1(a).

E.M. was born in August of 1979 and lives in Arizona. In about late 1996 or early 1997, E.M. was a seventeen-year-old high school student. She read Defendant's Internet profile, decided that his interests were similar to hers and sent him an email.

Defendant and E.M. corresponded via email, an instant messaging program ("IM") and the phone. E.M. told Defendant she was seventeen. She talked to him about her family and emotional problems, including "cutting," i.e., self-mutilation with a knife. Defendant tried to counsel E.M. to gain her trust.

Defendant and E.M. began to talk about sex. Defendant told E.M. about a sexual practice involving dominance and submission ("D & S"). Defendant opined to E.M. that she had a submissive personality.

Defendant and E.M. had phone sex. Defendant asked E.M. to send him nude photographs of herself. Defendant specifically requested close-up photographs of E.M.'s pubic area. E.M. took a roll of nude photographs of herself, including close-up shots of her pubic area. E.M. mailed the roll of film to Defendant. Defendant told E.M. that the photographs she sent were "hot" and he was happy she sent them.

Defendant repeatedly asked E.M. to send him pornographic videos of herself. E.M. borrowed her high school's video camera and used it to make child pornography for Defendant.

In the first video, E.M. taped a typical day in her life, "not hiding the embarrassing stuff." At Defendant's request, she taped herself giving a tour of her high school, changing her clothes, masturbating and penetrating her anus and vagina with her finger and a foreign object. E.M. testified that, because she was shy, it was difficult for her to make the video, but she did it because Defendant asked her to do so.

In the second video, E.M. refers to Defendant as "master," because he was the "dominant" in their D & S. Defendant asked E.M. to show her anus on the video, and she complied. E.M. spanked herself, because Defendant wanted to see her punish herself. Again, E.M. testified that it was difficult for her to make the video, but she created the video to please Defendant.

Defendant and E.M. talked about having a "threesome," so E.M. enlisted her sixteen-year-old female friend, T.(LNU), to be in a third video. In the video, E.M. and T.(LNU) are naked. E.M. and T.(LNU) touch each other, and Defendant is on the phone telling both minors what to do. E.M. warned Defendant that T.(LNU) was uncomfortable, but Defendant asked E.M. to keep pushing T.(LNU) to participate. Defendant reassured E.M. that T.(LNU) was hesitating because she was excited.

The foregoing evidence clearly shows that Defendant "caus[ed] . . . a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such

6

conduct . . . ." USSG §2G2.2(c)(1). Defendant introduced E.M. to D & S and persuaded her to produce child pornography and send it to him.

Defendant argues that he could not have "caused" E.M. to produce child pornography or engage in sexual conduct, because he never met E.M. in person. He opines that E.M. "had numerous opportunities to just stop and not send the [child pornography]" but deliberately chose not to do so. Defendant's Sentencing Memorandum ("Def.'s Memo.") (docket no. 104) at 3 (emphasis in original).

Nothing in USSG §2G2.2(c)(1) requires the defendant to meet the minor in person. The cross-reference applies if the defendant *causes* the minor to engage in sexually explicit conduct for the purpose of producing child pornography. USSG §2G2.2(c)(1). The court must apply the cross-reference "broadly" to "include[] all instances where the offense involved . . . using, persuading, inducing [or] enticing . . . a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct." USSG §2G2.2 cmt. (n.5). "A defendant's conduct may be one step removed from the actual production and still fall within the ambit of the cross-reference." *United States v. Garcia*, 411 F.3d 1173, 1179 (10th Cir. 2005); *see, e.g., United States v. Whitesell*, 314 F.3d 1251, 1255-56 (11th Cir. 2002) (holding that the cross-reference applied where the defendant received pornographic photographs from a minor girl, whom he had asked to take pornographic photographs of herself and another minor girl). *But see United States v. Chapman*, 60 F.3d 894, 900 n.8 (1st Cir. 1995) (opining, without explanation, that a defendant who does not have physical contact with a minor "should not be sentenced under §2G2.1").

It is true that Defendant availed himself of modern technology, thereby saving himself the expense of traveling to Arizona to make the child pornography himself. Nonetheless, he still caused E.M. to produce child pornography. Defendant used, persuaded, induced and enticed E.M. to make child pornography, as a part of the D & S

7

sexual practice that he encouraged and developed within her.

Accordingly, the court holds that the cross-reference at §2G2.2(c)(1) applies with respect to E.M. USSG §2G2.2(c)(1)

### 2. *Commission of a sexual act—USSG §2G2.1(b)(2)(A)*

The second issue is whether the court should apply a two-level enhancement, pursuant to USSG §2G2.1(b)(2)(A), for the commission of a sexual act with E.M. *See* PSIR ¶ 49.

Section §2G2.1(b)(2)(A) provides for a two-level enhancement "[i]f the offense involved . . . the commission of a sexual act . . . ." USSG §2G2.1(b)(2)(A). The Sentencing Guidelines define "sexual act" as "the meaning of that term in 18 U.S.C § 2246(2)." USSG §2G2.1 cmt. (n.2).[4] The government contends that the enhancement applies, because Defendant's offense involved "the penetration . . . of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(2)(C).

---

[4] In full, § 2246(2) defines "sexual act" as:

> (A) contact between the penis and the vulva or the penis and the anus . . . ;
> (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
> (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
> (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person . . . .

18 U.S.C. § 2246(2).

8

Defendant objects to the enhancement. He points out that the evidence only shows that he caused E.M. to penetrate her own vagina and own anus with her own finger and her own foreign object, and the foregoing definition of "sexual act" does not include masturbation.

The court holds that § 2246(2) does not include masturbation in its definition of a "sexual act." Other courts have stated (albeit in other contexts) that § 2246(2) requires some physical contact between the defendant and another person. *See, e.g., United States v. Hayward*, 359 F.3d 631, 640 (3d Cir. 2004) (remarking that § 2246(2) is "plain and explicit: [it] require[s] actual touching, a meeting of body surfaces"); *see also Levi v. Holt,* 192 Fed. Appx. 158, 160-62 (3d Cir. 2006) (implying in dicta that § 2246(2) has a relatively narrow definition of "sexual act" that requires the participation of two persons and does not include self-masturbation); *Smith v. Fed. Bureau of Prisons*, No. CIV A 7:07CV00184, 2007 WL 1225546, *2 (W.D. Va. Apr. 24, 2007) (similar); *McRea v. O'Brien*, No. CIV A 7:06CV00742, 2007 WL 128325, *1 n.2 (W.D. Va. Jan. 9, 2007) (similar); *cf.* Wright & Miller, *Fed. Prac. & Proc.* § 5414 n.39 ("For reasons not apparent, the effect of this definition is to [exclude] manual masturbation of the male, whether by [a] male or by a female"). Congress inserted the phrase "of another" in a limited manner in § 2246(2)(C). The phrase "of another" modifies "anal or genital opening" but not "hand," "finger" or "object." Thus the "opening" must be on a different person than the "hand," "finger" or "object"; that is, the statute requires the participation of at least two persons. In other words, the "anal or genital opening *of another*" is distinguished from the "hand," "finger," or "object" *of the defendant*. 18 U.S.C. § 2246(2) (emphasis added). The government's interpretation of the statute, in which "of another" is translated as "of the victim," is disfavored, because such interpretation would render Congress's use of "of another" mere surplusage. *See Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 698 (1995) (stating that courts must be

9

"reluctan[t] to treat statutory terms as surplusage"). *Compare* 18 U.S.C. § 2246(A) and (B) (not using "of another"), *with id.* § 2246(C) and (D) (using "of another").

The court recognizes that its construction of § 2246(2)(C) does not accord with the commonsense definition of "sexual act." However, the court is obliged to apply the plain language of the statute. *United States v. Oslund*, 453 F.3d 1048, 1062 (8th Cir.), *cert. denied*, 127 S. Ct. 750 (2006). It is within Congress's prerogative to advise harsher sentences upon child pornographers who have physical sexual contact with their victims.

Accordingly, the court holds that a two-level enhancement, pursuant to USSG §2G2.1(b)(2)(A), for the commission of a sexual act with E.M. is not appropriate.

### 3. *Sadistic and violent conduct—USSG §2G2.1(b)(4)*

The third issue is whether the court should apply a four-level enhancement, pursuant to USSG §2G2.1(b)(4), for sadistic and violent conduct, with respect to E.M. *See* PSIR at ¶ 50.

Section 2G2.1(b)(4) provides for a four-level enhancement "[i]f the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence . . . ." USSG §2G2.1(b)(4). The videotapes clearly contain sadistic and violent material, insofar as they show the penetration of E.M. with a foreign object. *See United States v. Parker*, 267 F.3d 839, 847 (8th Cir. 2001) ("Given the plain meaning of 'violence,' it is difficult to imagine that the sexual penetration with a foreign object of a minor female would not qualify as 'violence' even if self-inflicted."). "The terms 'violence' and 'sadism' . . . are not limited to activity involving a rope, belt, whip, chains, or other instruments . . . ." *Id.* at 847. Defendant's characterization of the anal and genital penetration as "possibly . . . yield[ing] sexual release" is beyond the pale. Def.'s Memo. at 5.

Accordingly, the court holds that a four-level enhancement, pursuant to USSG §2G2.1(b)(4), applies.

### *4.     Vulnerable victim—USSG §3A1.1(b)(1)*

The fourth issue is whether the court should apply a two-level enhancement, pursuant to USSG §3A1.1(b)(1), because E.M. is a vulnerable victim. *See* PSIR at ¶ 51.

Section 3A1.1(b)(1) provides for a two-level enhancement "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim . . . ." USSG §3A1.1(b)(1). A "vulnerable victim" is "a person (A) who is a victim of the offense of conviction . . . and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." *Id.* cmt. (n.2). "If age is already incorporated into the offense guideline, however, it cannot serve as a basis for the enhancement." *United States v. Myers*, No. 06-2565, 2007 WL 1094445, *2 (8th Cir. Apr. 13, 2007) (citing USSG §3A1.1 cmt. (n.1)).

E.M. had significant psychological and family problems when Defendant was sexually exploiting her. Her parents had separated, and she was fighting "like cats and dogs" with her mother. Her father had recently found a new girlfriend who did not want E.M. around. More significantly, E.M. was mutilating herself with a knife. E.M. was a vulnerable, emotionally disturbed individual who was particularly susceptible to Defendant's entreaties and deceptions. Defendant was not only aware of these problems, but he also pseudo-counseled E.M. in order to gain her confidence and then sexually exploit her for the purpose of producing child pornography.

Accordingly, the court holds that a two-level enhancement pursuant to USSG §3A1.1(b)(1) is appropriate. *Compare Myers*, 2007 WL 1094445, at *2-*4 (affirming district court's decision not to apply vulnerable victim enhancement, because there was no indication that the defendant knew or should have known victim had ADHD), *with United States v. White*, 979 F.2d 539, 544 (7th Cir. 1992) (finding that victim's troubled childhood, history of sexual abuse and living situation supported vulnerable victim enhancement).

### B. Victim T.(LNU)

#### 1. *Minor victim—USSG §2G2.2 cmt. (n.1)*

The fifth issue is whether T.(LNU) qualifies as a minor victim for purposes of the Sentencing Guidelines. *See* PSIR at ¶¶ 26, 55-59, 127.

As indicated in Part III.A.1, the cross-reference at §2G2.2(c)(1) applies if "the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct . . . ." USSG §2G2.2(c)(1). The Sentencing Guidelines define a "minor" as including "an individual who had not attained the age of 18 years . . . ." USSG §2G2.2 cmt. (n.1). Defendant objects to the use of the cross-reference with respect to T.(LNU), because he claims there is insufficient evidence that T.(LNU) is a minor.

The court finds that T.(LNU) is a minor. E.M. testified that she was seventeen years old when the videotapes were made and that her friend, T.(LNU), was younger. E.M. is a fully credible witness.

Accordingly, the court holds that T.(LNU) qualifies as a minor victim for purposes of the Sentencing Guidelines. USSG §2G2.2 cmt. (n.1).

#### 2. *Cross-reference applicability—USSG §2G2.2(c)(1)*

The sixth issue is whether the cross-reference at §2G2.2(c)(1) applies with respect to T.(LNU). *See* PSIR at ¶¶ 55, 59. The parties reassert the arguments set forth in Part III.A.1 above, and the court incorporates its ruling by reference. The court also points out that Defendant is giving T.(LNU) verbal directions on the videotape. Further, Defendant encouraged E.M. to help T.(LNU) overcome her hesitation to engage in sexual contact with E.M.

Accordingly, the court holds that the cross-reference at §2G2.2(c)(1) applies with respect to T.

12

### C. Three Other Victims—K.E., V.M. and K.S.

The seventh issue is whether Defendant should receive a two-level enhancement, pursuant to USSG §2G2.1(b)(6), with respect to each of three victims, K.E., V.M. and K.S., for misrepresenting his identity or using a computer. *See* PSIR at ¶¶ 61 (K.E.), 67 (V.M.) and 73 (K.S.).

Section 2G2.1(b)(6) provides:

> If, for the purpose of producing sexually explicit material, the offense involved (A) the knowing misrepresentation of a participant's identity to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage [sic] sexually explicit conduct; or (B) the use of a computer or an interactive computer service to (i) persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct, or to otherwise solicit participation by a minor in such conduct; or (ii) solicit participation with a minor in sexually explicit conduct, increase by **2** levels.

USSG §2G2.1(b)(6) (emphasis in original). The court examines Defendant's conduct toward each victim, in turn.

#### 1. K.E.

K.E. was born in April of 1988. She communicated with Defendant in 2004 when she was sixteen years old and living in Arizona. K.E. placed her profile on a vampire-themed website. K.E. included her birthdate, which the website used to automatically update her age.

Defendant contacted K.E. through the Internet. K.E. told Defendant she was sixteen years old. Defendant lied and told K.E. that he was between twenty-two and twenty-four years old. Defendant was born in May of 1962, so he was approximately forty-two years old at the time.

Defendant began to call K.E. at home. Defendant told K.E. about photograph albums that contained provocative photographs of other girls. He asked K.E. to send him

13

provocative photographs of herself, including photographs of her pubic and genital area.

Defendant and K.E. had phone sex. During phone sex, Defendant asked her to "soak a pair of [her] underwear in [her] cum and put it into a Zip-loc baggie and mail it to him." Defendant also mailed a disposable camera to K.E. so that she could send him nude photographs.

Defendant opines that merely lying about one's age is insufficient to constitute a "knowing misrepresentation of [his] identity." Further, he asserts that, "[s]hould K.E. have taken the time to look, she could have found [Defendant] quite easily in a phone book or online people-locator service, along with his likely date of birth, address, and other information." Def.'s Memo. at 9.

The foregoing facts clearly establish that a two-level enhancement is warranted with respect to K.E. USSG §2G2.1(b)(6). Defendant's lie about his age is sufficient to trigger the enhancement. *See* USSG §2G2.1 cmt. n.4(A) ("The misrepresentation to which the enhancement . . . may apply includes misrepresentation of a participant's name, *age*, occupation, gender, *or* status . . . . " (emphasis added)). The law does not impose a burden upon minors to verify the ages of dangerous sexual predators that lie to them. Defendant misrepresented his identity and used a computer to persuade, induce and entice K.E. to engage in sexually explicit conduct for the purpose of producing sexually explicit material of her.

### 2. *V.M.*

V.M., who was born in August of 1988, met Defendant around 2004 after she posted a profile on a vampire-themed website. V.M.'s profile indicated that she was sixteen years old and from Illinois. Defendant contacted V.M., and the two began to communicate with each other by email.

V.M. and Defendant emailed each other every other day for about one month. They wrote about sex, including D & S. V.M. told Defendant that she was sixteen years

old, and Defendant lied and told V.M. that he was in his twenties. Defendant asked V.M. to send him nude photographs of herself. V.M. complied and emailed nude photographs of herself to Defendant. Defendant then requested that she send more photographs with closer shots of her pubic area. V.M. did not send any such photographs to Defendant.

The foregoing facts establish that a two-level enhancement is warranted with respect to V.M. USSG §2G2.1(b)(6). Defendant misrepresented his identity and used a computer to persuade, induce and entice V.M. to engage in sexually explicit conduct for the purpose of producing sexually explicit material of her.

### 3. K.S.

K.S., who was born in October of 1988 and lives in New York, began communicating with Defendant when she was seventeen years old. She saw Defendant's profile on a website named "Hi5" and, noticing that he had similar interests, sent him an email. K.S. and Defendant began to email and IM each other on a regular basis.

K.S. told Defendant she was seventeen years old, and he lied and told her he was twenty-four years old. Defendant began to talk to her about sadistic and masochistic sexual conduct. Defendant asked K.S. to visit him in Iowa and explained to K.S. the sexual acts they could perform on each other.

K.S. had phone sex with Defendant but felt "horrible" afterwards. Defendant assured K.S. that he loved her and had never developed feelings so quickly for anyone. Defendant asked K.S. to send him nude photographs that she had taken of herself, including nude photographs of her pubic area, breasts and bottom. Defendant told K.S. that, if she really cared for him, she would take the photographs. K.S. took the photographs and emailed them to Defendant, because she felt pressured by him. Defendant later told K.S. that he enjoyed the photographs. He asked her to send him a video of her touching herself and taking her clothes off slowly and spinning around. K.S. did not send Defendant a videotape.

15

The foregoing facts establish that a two-level enhancement is warranted with respect to K.S. USSG §2G2.1(b)(6). Defendant knowingly misrepresented his identity and used a computer to persuade, induce and entice K.S. to engage in sexually explicit conduct for the purpose of producing sexually explicit material of her.

### *4. Disposition*

Accordingly, the court holds that a two-level enhancement is appropriate, pursuant to USSG §2G2.1(b)(6), for K.E., V.M. and K.S.

### *D. Repeat and Dangerous Sex Offender—USSG §4B1.5(b)(1)*

The eighth issue is whether the court should apply a five-level enhancement, pursuant to USSG §4B1.5(b)(1), because Defendant is a repeat and dangerous sex offender. *See* PSIR at ¶ 147.

With some exceptions not relevant here, §4B1.5(b)(1) provides:

> (b) In any case in which . . . the defendant engaged in a pattern of activity involving prohibited sexual conduct:
>
> (1) The offense level shall be **5** plus the offense level determined under Chapters Two and Three.

USSG §4B1.5 (emphasis in original). Defendant argues that he did not engage in a "pattern of activity." He also denies that his conduct meets the definition of "prohibited sexual conduct."[5]

The guidelines provide the following instructions and definitions for "pattern of activity" and "prohibited sexual conduct":

> (A) <u>Definition</u>. . . . "[P]rohibited sexual conduct" means

---

[5] Defendant also argues that application of the enhancement and USSG §2G2.1(d)(1) would result in impermissible "double counting." The government contends that the parties did not agree to litigate this issue in this portion of the bifurcated sentencing proceedings. The court defers ruling on the argument until sentencing resumes and the issue is fully briefed.

> . . . : (i) any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B); (ii) the production of child pornography; or (iii) trafficking in child pornography only if, prior to the commission of the instant offense of conviction, the defendant sustained a felony conviction for that trafficking in child pornography. It does not include receipt or possession of child pornography. "Child pornography" has the meaning given that term in 18 U.S.C. § 2256(8).
>
> (B) <u>Determination of Pattern of Activity</u>.—
>
> (i) <u>In General</u>.— [T]he defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor.
>
> (ii) <u>Occasion of Prohibited Sexual Conduct</u>.—An occasion of prohibited sexual conduct may be considered . . . without regard to whether the occasion (I) occurred during the course of the instant offense; or (II) resulted in a conviction for the conduct that occurred on that occasion.

USSG §4B1.5 cmt. (n.4) (emphasis in original). Under these definitions, the five-level enhancement is clearly appropriate. Defendant's acts of producing child pornography of V.M. and K.S. is "prohibited sexual conduct." *Id.* cmt. (n.4(A)(ii)). These acts are part of a pattern of activity, insofar as Defendant produced child pornography of V.M. and K.S. on at least two different occasions. *Id.* cmt. (n.4(B)).[6]

Accordingly, the court holds that a five-level enhancement is applicable, pursuant

---

[6] The government only argues that such enhancement is appropriate on account of Defendant's conduct towards V.M. and K.S. Therefore, the court shall not analyze this enhancement with respect to the other victims.

to USSG §4B1.5(b)(1), because Defendant is a repeat and dangerous sex offender.[7]

### E. Defendant's Criminal History

#### 1. 1987 Theft Conviction

The ninth issue is whether the court should count Defendant's 1987 state court conviction for Theft in the Second Degree ("1987 Theft Conviction"), pursuant to USSG §4A1.2(e)(1), when assessing Defendant's criminal history. *See* PSIR at ¶ 158.

In relevant part, USSG §4A1.2(e)(1) provides:

> Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted.

USSG § 4A1.2(e)(1). Defendant contends that his 1987 Theft Conviction is too old, because the earliest offense of conviction commenced in 2004.

The Sentencing Guidelines define "commencement of the instant offense" broadly to include "any relevant conduct." USSG §4A1.2 cmt. (n.8) (citing USSG §1B1.3). "[C]ourts are not restricted to the allegations in the indictment in determining the date of the 'commencement of the instant offense' under § 4A1.2(e) . . . ." *United States v. Kennedy*, 32 F.3d 876, 890 (4th Cir. 1994). "[S]entencing courts may consider preindictment activity to establish the starting date of the offense, and then use that date to calculate the time period for which prior sentences are counted." *Id.* (citing *United States v. Harris*, 932 F.2d 1529, 1538 (5th Cir. 1991); *United States v. Eske*, 925 F.2d 205, 207-08 (7th Cir. 1991) and *United States v. Kayfez*, 957 F.2d 677, 678 (9th Cir. 1992)). Defendant's production of child pornography in late 1996 or early 1997 is clearly relevant conduct to his possession of the very same child pornography in May of 2005. USSG §1B1.3.

Accordingly, the court overrules Defendant's objection to the PSIR and finds that

---

[7] This finding is conditional for the reasons stated in footnote 5, *supra*.

Defendant's 1987 Theft Conviction should count towards his criminal history score.

### 2. *Committing offense while on supervised release*

The tenth issue is whether Defendant should be assessed two criminal history points pursuant to USSG §4A1.1(d), because he committed the instant offense while serving a term of federal supervised release. *See* PSIR at ¶ 163.

Section 4A1.1(d) instructs the court to add two criminal history points "if the defendant committed the instant offense while under any criminal justice sentence, including . . . supervised release . . . ." USSG §4A1.1(d). "[T]he instant offense" is defined broadly to include "any relevant conduct." *Id.* cmt. (n.4).

It is undisputed that Defendant was serving a term of federal supervised release from December of 2000 to December of 2003. The trial evidence shows that Defendant directed E.M. to produce child pornography of herself and T.(LNU) in about late 1996 or early 1997. Defendant was later found to be in possession of the very same child pornography when it was seized in March of 2005. There is no evidence that there was any interruption in Defendant's possession of the child pornography. Therefore, the court finds that Defendant possessed it while he was on supervised release.

Accordingly, the court finds that Defendant should be assessed two criminal history points pursuant to USSG §4A1.1(d), because he committed the instant offense while serving a term of federal supervised release.

### IV. CONCLUSION

The court shall calculate Defendant's advisory Sentencing Guidelines range in accordance with this Sentencing Memorandum.

**IT IS SO ORDERED.**

**DATED** this 15th day of May, 2007.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

20